# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| LAKEWOOD CITIZENS WATCHDOG GROUP, a Colorado nonprofit corporation, | |
| *Plaintiff,* | |
| *v.* | No. 1:21-cv-1488 |
| CITY OF LAKEWOOD, COLORADO, a Colorado Home Rule Municipal Corporation, and BRUCE ROOME, in his official capacity as City Clerk, City of Lakewood, Colorado, | **COMPLAINT** |
| *Defendants.* | |

### INTRODUCTION

Lakewood, Colorado, officials don't like being criticized. But if the First Amendment means anything, it means Americans are free to criticize government officials, even through newsletters. And that freedom is even more essential in the context of elections.

The Lakewood Citizens Watchdog Group ("Watchdog" or "LCWG") publishes *The Whole Story*, a newsletter offering views on civic matters

and political candidates that depart from the government's preferred narrative. Motivated by their disdain for *The Whole Story*, and forgetting that the First Amendment protects associations' privacy rights, Lakewood officials fined Watchdog for not divulging its supporters. Watchdog intends to keep publishing articles in *The Whole Story* that city officials dislike, but it fears doing so because of the city's demonstrated commitment to silence it through unconstitutional regulations. These regulations violate the First Amendment. They should be enjoined.

## JURISDICTION

1.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 1983, because the case raises a federal question as to whether Defendants are violating Plaintiff's First and Fourteenth Amendment rights under color of state law.

VENUE

2.      Venue lies in this Court pursuant to 28 U.S.C. § 1391, as the defendants reside in this judicial district, and all the events and omissions giving rise to the claim occurred in this judicial district.

PARTIES

3.      Plaintiff Lakewood Citizens Watchdog Group is a Colorado nonprofit corporation.

4.      Defendant City of Lakewood is a Colorado Home Rule Municipal Corporation, with the power to enact its own campaign finance regulations. *See* Colo. Const. art. XX, § 6. Lakewood regulates all speech and press activity regarding City candidates, including incumbents, and ballot measures. Lakewood Ordinance § 2.54.010 *et seq*.

5.      Defendant Bruce Roome is the City Clerk for Lakewood, Colorado. As such, he is responsible for the administration and enforcement of the Lakewood campaign finance laws. Lakewood Ordinance § 2.54.050(B). He is sued in his official capacity.

3

FACTS

*Lakewood Citizens Watchdog Group and The Whole Story*

6.      Watchdog is not owned or operated by any city candidate, political party, or political committee. Watchdog began posting news articles to its website in 2014. Since 2015, it has been publishing a newsletter called *The Whole Story* two to three times per year, covering news in Lakewood, Colorado. As declared on *The Whole Story*'s face, Watchdog's mission is to "keep the people informed of the happenings of their local government that are ignored by a compliant news media."

7.      Watchdog mails *The Whole Story* to Lakewood residents. The publication's distribution totals approximately 22,000 copies.

8.      *The Whole Story* investigates and reports on a diverse array of topics, including changes in city trash collection, bond issues, officeholder behavior, city growth, campaign contributions, and campaign finance reform. The newsletter's articles have also provided information about candidates' positions and voting records, campaign finance summaries for candidates, the special interests supporting them, and ballot issues. It also reports on county issues.

9.     Watchdog published *The Whole Story* successfully and without any campaign finance enforcement by the City from 2015 through 2018.

*The Regulatory Regime*

10.    With support from Councilwoman Dana Gutwein, who has since made clear her opposition to Watchdog, the Lakewood City Council passed Ordinance O-2018-22 on January 14, 2019, repealing and replacing Chapter 2.54 of the Lakewood Municipal Code, entitled "Campaign and Political Finance in Municipal Elections." *See* Minutes, Regular meeting of the City Council, City of Lakewood (Jan. 14, 2019), https://bit.ly/3eqkq2R; Councilwoman Dana Gutwein, Facebook (Oct. 5, 2019), https://bit.ly/3xJoRx7 ("@ Lakewood Watchdog, You can kick me but ya can't keep a good girl down. Still out talking to voters and standing up for our values. 😊#FullHeartsCantLose").

11.    The following day, Gutwein emphasized that the new ordinance was aimed at Watchdog, declaring "that electioneering communications like the Watchdog must [now] disclose who is paying for it, and include a disclaimer, reducing the influence of dark money on our local

elections." Councilwoman Dana Gutwein, Facebook (Jan. 15, 2019),

https://bit.ly/3vFMbtJ.

12.    Indeed, under the new codification, Lakewood Mun. Code

§ 2.54.020 defines "electioneering communication" as "any

communication broadcast by television or radio, printed in a

newspaper or on a billboard, directly mailed, transmitted by means of

the internet, or delivered by hand to personal residences or otherwise

distributed that: (I) unambiguously refers to any candidate without

expressly advocating that candidate; and (II) is broadcast, printed,

mailed, delivered or distributed within 60 days before a municipal

election; and (III) is broadcast to, printed in a newspaper distributed

to, mailed to, delivered by hand or electronically transmitted to any

communication by persons made in the regular course and scope of

their business or any to an audience that includes members of the

electorate for such public office."

13.    Pursuant to Lakewood Mun. Code § 2.54.070(1), when more

than $500 is spent on an "electioneering communication," the entity

making such communication must disclose to the City Clerk the

amount expended and the name, address, occupation, and employer of any person contributing more than $250.

14.    The "electioneering communication" must include a disclaimer in the communication itself stating the full name of the person paying for the communication, that the communication is "not authorized by any candidate," and the name of a natural person who is a registered agent if the communication is paid for by a corporation. Lakewood Mun. Code § 2.54.070(3).

15.    Lakewood fails to exempt press activity, such as newspaper endorsements, from its definitions of "expenditures" and "independent expenditures." *See* Lakewood Mun. Code § 2.54.020. Without exception, Lakewood defines an "expenditure" as "any purchase, payment, distribution, loan, advance, deposit, or gift of money by any person for the purpose of expressly advocating the election or defeat of a candidate or supporting or opposing a ballot issue or ballot question." *Id*. Lakewood defines an "independent expenditure" as "an expenditure that is not controlled by or coordinated with any candidate or agent of such candidate." *Id*.

16.     Any person that spends $500 or more on an independent expenditure must register as an Independent Expenditure Committee and disclose to the City Clerk the amount expended and the name, address, occupation, and employer of any person contributing more than $250 for the purpose of making an independent expenditure. Lakewood Mun. Code §§ 2.54.020; 2.54.030(F)(1); 2.54.030(F)(2)(b)(I).

17.     An independent expenditure costing over $500 must include a disclaimer in the communication itself stating the full name of the person paying for the communication, stating that the communication is "not authorized by any candidate," and disclosing the name of a natural person who is a registered agent if the communication is paid for by a corporation. Lakewood Mun. Code § 2.54.030(F)(3)(a).

18.     Individuals begin to bear the burdens of the independent expenditure reporting regime when spending or receiving just $20. Any person accepting such contributions or making such expenditures must establish a separate account in a financial institution, and all contributions and expenditures must be deposited in and expended from that account. Lakewood Mun. Code § 2.54.030(F)(5).

19.    Individuals and entities that violate these provisions are subject to sanctions. *See* Lakewood Mun. Code § 2.54.050(C).

*Enforcement of Lakewood's Ordinance*
*Against* The Whole Story*'s Publication*

20.    Following *The Whole Story*'s publication of an issue that covered a special election about Lakewood's growth cap, Lakewood resident Steven Buckley filed a campaign finance complaint against Watchdog. That complaint was eventually dismissed. Joseph Rios, *So, What is the Lakewood Watchdog?: Citizen Driven Newspaper Accused of Election Violations*, Lakewood Sentinel, Nov. 14, 2019, at 7, https://bit.ly/3nUzsAL.

21.    Two Lakewood residents also spoke before the Lakewood City Council on September 9, 2019, asking for official action against *The Whole Story*. *See* Minutes, Regular meeting of the City Council, City of Lakewood (Sept. 9, 2019), https://bit.ly/3eWeZaH.

22.    Stories in *The Whole Story*'s October 1, 2019 issue covered Lakewood's November 5, 2019 mayoral and city council election. That election proved particularly contentious, garnering attention from the *Denver Post* close-in-time to the City's elections. John Agular, *Pot*

*companies, developers taking sides in contentious Lakewood election*,

Denver Post, Oct. 28, 2019, https://dpo.st/3eg9OmY.

23. On October 23, 2019, Lakewood resident Tom Keefe filed a

campaign finance complaint against Watchdog, alleging that *The Whole*

*Story*'s October 2019 edition violated Lakewood Mun. Code § 2.54

because it contained electioneering communications without publishing

the required disclaimers and without revealing Watchdog's donors.

24. The City Clerk at the time, Michele Millard, determined that

Keefe's complaint was not frivolous, and she referred the matter to an

Administrative Hearing Officer ("AHO").

25. Watchdog argued that *The Whole Story* is not an electioneering

communication, but rather a newspaper that should be exempt from

campaign finance laws requiring disclosures and disclaimers. But the

AHO determined that *The Whole Story* was a newsletter, not a

newspaper, and that Lakewood's law in any event did not include a

press exemption. Order at ¶¶7-8, *In re: Complaint filed by CITY OF*

*LAKEWOOD, STATE OF COLORADO, Complainant, against*

*LAKEWOOD CITIZENS WATCHDOG GROUP, Respondent* (Sept. 14, 2020) ("AHO Order"), https://bit.ly/3vxRrzU.

26.    The city had dismissed complaints that news stories in other publications were electioneering communications, stating that they were not the functional equivalent of express advocacy. The AHO here, however, concluded that the October 2019 edition of *The Whole Story* was an electioneering communication because it was the functional equivalent of express advocacy.

27.    Watchdog was ordered to pay defendant City $500 for failing to file electioneering communication reports, and $2,500 for not printing electioneering communication disclaimers as part of *The Whole Story*.

*The Regulatory Regime's Continuing Impact on Watchdog*

28.    *The Whole Story* will remain in business, as it has since 2014. Watchdog intends to continue publishing *The Whole Story* newsletter, in 2021 and later years with elections and ballot contests, featuring materially and substantially similar content to that previously published, including coverage of political issues and figures.

11

29.     For example, Watchdog wishes to publish spring/summer and fall 2021 issues of *The Whole Story*. These issues will cover many topics and issues important to Lakewood's citizens, which will necessarily include discussions of candidates, city officials who are also candidates, and ballot measures. The City, however, has concluded that when Watchdog—but not other news sources—shares news that paints candidates or officials who are candidates in a critical or complimentary light, that Watchdog has made electioneering communications that are also express advocacy. Watchdog therefore fears that its fall issue, which will fall within the 60-day electioneering communications window like the October 2019 issue, will trigger Lakewood's electioneering communications burdens. Similarly, given the City's conclusion that Watchdog's reporting is advocacy, Watchdog fears that its spring/summer issue will trigger Lakewood's independent expenditure burdens. Thus, although Watchdog has its spring/summer 2021 edition ready to publish, it will not publish the spring/summer or fall editions if it must choose between punishment for doing so or giving up its and its donors' First Amendment rights.

COUNT ONE

FREEDOM OF THE PRESS, U.S. CONST. AMENDS. I, XIV, 42 U.S.C. § 1983

30.    Plaintiff realleges and incorporates by reference paragraphs 1 through 29.

31.    The First Amendment, which applies against Defendants by operation of the Fourteenth Amendment, guarantees the freedom of the press.

32.    The Administrative Hearing Officer made the distinction between "newspapers" and "newsletters" as if that was a legally relevant distinction. AHO Order. at ¶7 ("Respondent admitted that the publication was a 'newsletter', which is quite different than a newspaper.").

33.    As far back as 1938, the Supreme Court held that "[t]he press in its historic connotation comprehends every sort of publication which affords a vehicle of information and opinion." *Lovell v. City of Griffin*, 303 U.S. 444, 452 (1938).

34.    Press entities regularly produce endorsements expressly advocating for or against candidates and ballot measures. This has included endorsements for ballot measures or in letters to the editor by

newspapers in Lakewood. "Letters to the Editor," *Lakewood Sentinel* at 12, Oct. 24, 2019, https://bit.ly/3eZyi2O (discussing citizens' views on a ballot question on school funding in Jefferson County).

35.     Likewise, press entities regularly cover the events and actions of various candidates for office, even close to the election, and name those candidates and office holders. This has included newspaper articles about events and actions in Lakewood. John Agular, *Pot companies, developers taking sides in contentious Lakewood election*, Denver Post, Oct. 28, 2019, https://dpo.st/3eg9OmY; Joseph Rios, *Resource center open at Foothills Elementary: The Hub at Foothill Foodies offers food and clothing to those in need*, Lakewood Sentinel, Oct. 24, 2019, at 6, https://bit.ly/33gO6Zw (current), https://bit.ly/3eZyi2O (historic) (featuring photos of Lakewood Mayor Adam Paul, just before the election).

36.     Congress and federal agencies have sought to avoid unconstitutional overbreadth in both statute and regulation: they have limited the reach of "expenditure" and "electioneering communication" requirements with the use of exemptions for news and other speech. *See*

52 U.S.C. §§ 30101(9)(B)(i) and 30104(f)(3)(B)(i) (exemptions from

definition of "expenditure" and from "electioneering communications");

11 C.F.R. § 100.132 (press exemption to the definition of "expenditure");

11 C.F.R. § 100.73 (press exemption to the definition of "contribution");

11 C.F.R. § 100.29(c)(2) (press exemption to the regulation of

"electioneering communication").

37.    The State of Colorado likewise understood the necessity of

press exemptions in its campaign finance laws. *See*, *e.g.*, Colo. Const.

art. XXVIII, § 2(7)(b)(I) (press exemption to definition of "electioneering

communication"); Colo. Const. art. XXVIII, § 2(8)(b)(I) (press exemption

to the definition of "expenditure"); Colo. Rev. Stat. §§ 1-45-103(9) and -

103(10)(a) (statutory definitions of "electioneering communication" and

"expenditure" adopting state constitution definitions).

38.    Nevertheless, Lakewood's municipal code regulates any press

entity that covers its city council's activity, mentions candidates for city

office, or discusses city ballot measures. To engage in core press

activity, an entity must register, report, and carry city-scripted

disclaimers. This regulation is overbroad and not in any way tailored to any governmental interest.

39.    On their face, and as applied against Watchdog, its donors and its audience, Defendants' regulation of newsletters under Lakewood Mun. Code §§ 2.54.020, 2.54.030 and 2.54.070, violates the First Amendment freedom of the press.

40.    By enforcing these provisions, Defendants, under color of law, deprive Plaintiff, its donors, and their audience, of the freedom of the press in violation of the First and Fourteenth Amendments to the United States Constitution. Plaintiff is thus damaged in violation of 42 U.S.C. § 1983, and is therefore entitled to damages; declaratory and preliminary and permanent injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional customs, policies, and practices; and attorney fees and expenses pursuant to 42 U.S.C. § 1988.

COUNT TWO

RIGHT OF FREE SPEECH, U.S. CONST. AMENDS. I, XIV, 42 U.S.C. § 1983

41.    Plaintiff realleges and incorporates by reference paragraphs 1 through 40.

42. The First Amendment, which applies against Defendants by operation of the Fourteenth Amendment, guarantees the right to free speech.

43. The Supreme Court has long held that "speech concerning public affairs is more than self-expression; it is the essence of self-government." *Garrison v. La.*, 379 U.S. 64, 74-75 (1964). And the First Amendment's protections are at its "fullest and most urgent application to speech uttered during a campaign for political office." *Eu v. S.F. Cnty. Democratic Cent. Comm.*, 489 U.S. 214, 223 (1989) (internal quotation marks omitted). "[T]here is practically universal agreement that a major purpose of [the First] Amendment was to protect the free discussion of governmental affairs, of course including discussions of candidates.'" *Buckley v. Valeo*, 424 U.S. 1, 14 (1976) (per curiam) (quoting *Mills v. Ala.*, 384 U.S. 214, 218 (1966)) (cleaned up).

44. On their face, and as-applied against Watchdog, its donors and its audience, Defendants' regulation of *all* political speech as either express advocacy and thus as an "expenditure[]" under Lakewood Mun. Code §§ 2.54.020 and 2.54.030, or as an "electioneering

17

communication[]"under Lakewood Mun. Code §§ 2.54.020 and 2.54.070, triggering reporting and disclosure requirements, violates the First Amendment right of free speech.

45.     By enforcing these provisions, Defendants, under color of law, deprive Plaintiff, its donors, and their audience, of the right of free speech in violation of the First and Fourteenth Amendments to the United States Constitution. Plaintiff is thus damaged in violation of 42 U.S.C. § 1983, and is therefore entitled to damages; declaratory and preliminary and permanent injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional customs, policies, and practices; and attorney fees and expenses pursuant to 42 U.S.C. § 1988.

COUNT THREE

VOID FOR VAGUENESS, U.S. CONST. AMENDS. I, XIV, 42 U.S.C. § 1983

46.     Plaintiff realleges and incorporates by reference paragraphs 1 through 45.

47.     The First and Fourteenth Amendments prohibit the enforcement of vague laws.

48.     The definitions of "expenditures" and "electioneering communications" under Lakewood Mun. Code §§ 2.54.020, 2.54.030, or 2.54.070 are vague in that they do not clearly warn speakers about which messages Lakewood's campaign finance law will regulate. Given that complainants may attempt to use Lakewood's private complaint system to harass adversaries into silence, almost any "discussion of governmental affairs," *Buckley*, 424 U.S. at 14, may trigger City investigation and regulation, and it will be only after fighting out the administrative complaint that a speaker will know whether her speech is regulable. The Ordinance therefore "may not only trap the innocent by not providing fair warning or foster arbitrary and discriminatory application but also operate to inhibit protected expression by inducing citizens to steer far wider of the unlawful zone . . . than if the boundaries of the forbidden areas were clearly marked." *Id*. at 41 n.48 (internal quotation marks omitted) (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972)).

49.     Moreover, Defendants' regulatory scheme provides no way of knowing the difference between a press entity or a Committee whose publications are controlled.

50.     Therefore, Lakewood Mun. Code §§ 2.54.020, 2.54.030 and 2.54.070 are void for vagueness.

51.     By enforcing these provisions, Defendants, under color of law, deprive Plaintiff, its donors, and their audience, of their rights under the First and Fourteenth Amendments to the United States Constitution. Plaintiff is thus damaged in violation of 42 U.S.C. § 1983, and is therefore entitled to damages; declaratory and preliminary and permanent injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional customs, policies, and practices; and attorney fees and expenses pursuant to 42 U.S.C. § 1988.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Lakewood Citizens Watchdog Group requests that judgment be entered in its favor as follows:

1. An order permanently enjoining defendants, their officers, agents, servants, employees, and all persons in active concert or participation

with them who receive actual notice of the injunction, from enforcing Lakewood Mun. Code §§ 2.54.020, 2.54.030, and 2.54.070, as well as any related sanctions or fines, or in the alternative, from enforcing Lakewood Mun. Code §§ 2.54.020, 2.54.030, and 2.54.070, as well as any related sanctions or fines, against Watchdog's publication of *The Whole Story* or any similar publication.

2.  Declaratory relief consistent with the injunction, to the effect that Lakewood Mun. Code §§ 2.54.020, 2.54.030, and 2.54.070 are unconstitutionally void and unenforceable as they violate the First Amendment rights of free speech and press, and the Fourteenth Amendment's guarantee of due process against vague laws;

3.  An award of nominal damages to Watchdog in amount of $17.91;

4.  Cost of suit, including attorney fees and costs pursuant to 42 U.S.C. § 1988; and

5.  Any other relief as the Court deems just and appropriate.

Respectfully submitted,

s/ Owen Yeates
Owen Yeates
INSTITUTE FOR FREE SPEECH

21

1150 Connecticut Avenue, NW,
Suite 801
Washington, DC 20036
oyeates@ifs.org
Telephone: (202) 301-3300
Facsimile: (202) 301-3399

Dated: June 2, 2021                              *Counsel for Plaintiff*